JOSHUA M. SEARS *vs.* STREET COMMISSIONERS OF BOSTON.

JOSEPH H. BEALE *vs.* SAME.

FRANK BREWSTER & another, trustees, *vs.* SAME.

Suffolk.    January 17, 18, 1899. — May 18, 1899.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Statute relative to Sewerage Works — Constitutional Law.*

Because St. 1897, c. 426, entitled " An Act relative to the sewerage works of the city of Boston," purports to give the street commissioners power to levy special assessments on real estate upon other grounds than the receipt of special benefits, and to amounts beyond the amount, if any, of special benefits, and for expenditures which, as against such property, are not proper subjects for special taxation, it is unconstitutional.

*It seems* that St. 1897, c. 426, entitled " An Act relative to the sewerage works of the city of Boston," is unconstitutional in that it gives owners of property no opportunity of being heard upon their liability to assessment.

THREE PETITIONS for writs of certiorari to quash alleged erroneous assessments of taxes by the street commissioners of the city of Boston, made under St. 1897, c. 426, entitled " An Act relative to the sewerage works of the city of Boston."

The first two cases were heard before *Knowlton,* J., and reserved by him upon the petitions, answers, and certain testimony for the consideration of the full court. In the third case the respondents demurred, assigning as ground therefor that the petitioners had not stated " any such case as entitles them in law to the remedy or relief prayed for " against the respondents. The case was reported by *Knowlton,* J., on the petition and demurrer for the consideration of the full court. The facts appear in the opinion.

*A. J. Bailey,* for the respondents.

*C. F. Choate, Jr.,* for the petitioner in the first case.

*R. Foster & W. D. Turner,* (*J. M. Codman, Jr.* with them,) for the petitioner in the second case.

*J. B. Warner,* for the trustees.

KNOWLTON, J.    These are petitions for a writ of certiorari to quash an alleged illegal assessment of sewer charges upon property of the several petitioners. The law under which the

respondents assumed to act in determining these charges is the St. 1897, c. 426, of which the seventh and eighth sections are as follows:

" Section 7. The Board of Street Commissioners, with the approval of the mayor, shall annually, before the first day of July, determine just and equitable sewerage charges to be paid by estates in said city for the construction, maintenance, and operation of the sewerage works, taking into consideration in determining the charges the necessity of the works as caused by each estate, the amount of use thereof, if any, by the estate or its occupants, the benefit received therefrom by the estate, the amount of any assessment for a sewer paid by any owner of the estate, the length of time which has elapsed since such payment, and the use, if any, that has heretofore been made of the sewerage works by the occupants of the estate, and such other matters as they shall deem just and proper. The determination of such charges as aforesaid shall be final in all cases, and the amount thereof as determined for each estate shall be a lien thereon until paid, and said board shall notify the board of assessors of said city of the amount thereof forthwith after it has been determined, and the same shall be included in the next tax bill on the estate transmitted by said board to the collector, or in a tax bill therefor if no other tax bill is issued for such estate, and be collected as a part of the taxes on the estate.

" Section 8. All sewers and connections ordered to be made in constructing any way under the authority of chapter three hundred and twenty-three of the acts of the year eighteen hundred and ninety-one, and of acts in amendment thereof or in addition thereto, shall be deemed to be constructed under the authority of this act, and the expenses therefor shall not be considered in determining the assessable cost of work, to be assessed under the authority of said acts."

The petitioners contend that these provisions of the statute are unconstitutional, and the most important questions in the case arise upon this contention.

It is evident that these provisions cannot stand as authorizing an assessment of a general tax, because the assessment called for is not proportional and equal. The statute not only directs an assessment upon a particular class of property, instead of on all

taxable property, but it expressly requires in determining the charges the consideration of facts pertaining to particular estates in their relation to the charges and to previous assessments, which prevent the making of a proportional assessment, viewing it as a general tax and not as an assessment of benefits.

If we treat the determination of these charges as a local and special assessment upon particular estates, we have to consider the principles on which such taxation is founded. It is well established that taxation of this kind is permissible under the Constitution of this Commonwealth and under the Constitution of the United States only when founded upon special and peculiar benefits to the property from the expenditure on account of which the tax is laid, and then only to an amount not exceeding such special and peculiar benefits. *Boston* v. *Boston & Albany Railroad,* 170 Mass. 95, 101. *Weed* v. *Boston,* 172 Mass. 28. *Proprietors of Mount Auburn Cemetery* v. *Cambridge,* 150 Mass. 12, 14. *Norwood* v. *Baker,* 172 U. S. 269. *Sears* v. *Boston, ante,* 71. Several of the questions now before us were considered at length in the recent case last cited, and it is unnecessary to repeat the discussion of them.

Does this statute prescribe taxation upon these estates for special and peculiar benefits only, or does it purport to authorize taxation on other grounds than special benefits, and for amounts larger than the amounts of such benefits? It directs the street commissioners annually to " determine just and equitable sewerage charges to be paid by estates in said city," etc. It requires them to take into consideration several subjects in determining these charges, one of which is the benefit received by the estate, and others of which possibly have some relation to the benefit received, and it then authorizes them to consider " such other matters as they shall deem just and proper." The benefits to be considered in taxing each estate are not in terms those that are special and peculiar, but so far as the language goes may be those that it receives in common with the other estates in the city and with the inhabitants generally. The fact that the charges to be determined are for the construction, maintenance, and operation of the sewerage works of the whole city, gives some force to the possibility of a construction which includes all benefits; but whether this construction should be

adopted or not, the charges may be determined on any grounds which the street commissioners deem just and proper, and may not be founded in any great degree, if at all, upon special and peculiar benefits, and may in any particular case largely exceed such benefits.    This fact in itself is enough to bring the statute within the prohibition of the Constitution, inasmuch as it purports to authorize a taking of property to pay a charge which is not founded on a special benefit or equivalent received by the estate or its owner.    Such a taking would be without due process of law.    *Norwood* v. *Baker*, 172 U. S. 269.    *New Brunswick Rubber Co.* v. *Street Commissioners*, 9 Vroom, 190.    *Barnes* v. *Dyer*, 56 Vt. 469.    *Thomas* v. *Gain*, 35 Mich. 155.

The general tenor of this section seems at variance with the law in regard to special taxation.    It seems designed to group together a great variety of expenses, including all that are connected with the administration of the sewer department in the city of Boston, many of which are proper subjects for general taxation only, and to assess them all upon real estate.    In determining the charge to be made upon any particular estate it is clear that most of the expenses to be reimbursed would be found to have been incurred in ways that could bring no special or peculiar benefit to that estate.    The cost of constructing and maintaining sewers remote from it could confer no benefit.    In two of these cases it appears by averments of the petition, which are not denied in the answer, that the estates of the petitioner have previously paid special assessments made by the city for the construction of sewers into which the estates drain, and in one of them it appears in like manner that no sewers have been constructed under the St. 1897, c. 426, and no repairs made under the provisions of said act upon sewers already existing with which the estates of the petitioner have or can have any connection, or from the use of which said estates derive any benefit. Where lands have paid assessments for special benefits from the construction of all sewers by whose operation they are affected, it cannot be said that they receive an additional special and peculiar benefit from the general oversight and operation of the sewers of Boston such as to subject them to a second special assessment.    Expenses of this kind should be made the subject of general taxation.    The grouping of these various expenses

would seem to make it difficult, if not impracticable, under this statute to make assessments of special and peculiar benefits directly received by particular estates from the construction of sewers near them. Indeed, it appears from the testimony that the street commissioners did not attempt to make assessments in accordance with the principles recognized as correct by the courts. They adopted a scheme and applied it to the estates generally throughout the city, by which they charged as a special tax three and one half cents per hundred dollars of valuation of the land, exclusive of buildings, together with one fifth of the charge made for the use of water on the estate, with certain deductions from the charge for the use of water where the use was of a peculiar kind, like the manufacture of steam. This item of three and one half cents per hundred dollars of valuation of land was made up of one and one half cents per hundred dollars for general construction, which means construction in any part of the system of sewers, and two cents per hundred dollars for general maintenance, which means the expense of salaries, care of sewers, coal, and other things pertaining to the management and operation of the system.

That such expenses are proper subjects for general taxation, and not for special assessments, has often been decided. *Hammett* v. *Philadelphia*, 65 Penn. St. 146. *Washington Avenue*, 69 Penn. St. 352. *Appeal of City of Williamsport*, 187 Penn. St. 565. *Dietz* v. *Neenah*, 91 Wis. 422, 427. *Dyar* v. *Farmington Village Corp.* 70 Maine, 515, 527. *Hanscom* v. *Omaha*, 11 Neb. 37. In *Erie* v. *Russell*, 148 Penn. St. 384, 386, the court says: " Why should a sewer, demanded and constructed by the city, and paid for by assessments on the property fronting on the street under which it is laid, be maintained and reconstructed on the order of the municipality at the expense of such property? It was made, by the action of the city, a part of its system of sewerage, which is as necessary for the health of its people as its paved streets are for their use. Its construction was at the expense of the abutting property, and properly so, in discharge of the obligation arising from particular benefits conferred. It is now a constituent of the general system ordained by the city for the convenience and health of its inhabitants. This system confers benefits which are general; it is a public neces-

sity, and the expense of maintaining it should be provided for by general taxation." See *Child* v. *Boston*, 4 Allen, 41, 52 ; *Emery* v. *Lowell*, 104 Mass. 13, 16. In *Sears* v. *Boston*, *ante*, 71, this court held, with some hesitation, that watering streets, which before the passage of a statute on the subject was generally done at the expense of the abutters, conferred a direct and special benefit upon abutting property occupied for business or residence. Some other courts have held to the contrary. See *Chicago* v. *Blair*, 149 Ill. 310 ; *New York Ins. Co.* v. *Prest*, 71 Fed. Rep. 815. But in that case the relation of the expenditure to the abutting property was very different from that of the expenditure for salaries and other expenses of maintaining a sewer department to property whose owners have previously paid assessments for the special benefits to be received from the use of the sewers. In assessing such benefits when the sewers were constructed, it was assumed that the sewers would be kept in operation for the benefit of the public, and that owners of property assessed would only be called upon to contribute as general taxpayers their proper share of the expenses of operating them. It is probable that most estates which drain into sewers in Boston were specially assessed when the sewers were constructed. Because the statute purports to give the street commissioners power to levy special assessments on real estate upon other grounds than the receipt of special benefits, and to amounts beyond the amount, if any, of special benefits, and for expenditures which, as against such property, are not proper subjects for special taxation, we are of opinion that the statute is unconstitutional.

It is also contended by the petitioners that the statute gives owners of property no opportunity of being heard upon their liability to assessment. It is well established that the determination of the amount of taxes for special benefits to real estate by any tribunal to which the Legislature delegates the power, is a quasi judicial proceeding which cannot take final effect unless persons to be assessed have an opportunity to be heard. *New London Northern Railroad* v. *Boston & Albany Railroad*, 102 Mass. 386. *Parsons* v. *District of Columbia*, 170 U. S. 45, 52, 54. *Hagar* v. *Reclamation District No. 108*, 111 U. S. 701, 709. *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, 175. *Stuart* v.

*Palmer*, 74 N. Y. 183, 189. *Remsen* v. *Wheeler*, 105 N. Y. 573. *In re Union College*, 129 N. Y. 308. *Dietz* v. *Neenah*, 91 Wis. 422, 427. *Butler* v. *Board of Supervisors*, 26 Mich. 22. *Thomas* v. *Gain*, 35 Mich. 155. *Campbell* v. *Dwiggins*, 83 Ind. 473. *Ulman* v. *Baltimore*, 72 Md. 587. But if a party has a right to appeal, or to be heard upon an application for an abatement, it is sufficient. *Weed* v. *Boston*, 172 Mass. 28. *Palmer* v. *McMahon*, 133 U. S. 660. *Redwood County* v. *Winona & St. Peter Land Co.* 40 Minn. 512. See also *Sawyer* v. *State Board of Health*, 125 Mass. 182, 186; *Philadelphia* v. *Miller*, 49 Penn. St. 440; *Cleveland* v. *Tripp*, 13 R. I. 50. This statute makes no express provision for notice or a hearing. It declares that " the determination of such charges as aforesaid [that is by the street commissioners] shall be final in all cases," and provides for a notification of the determination to the board of assessors, and for the collection of the amount as a tax. In view of this language it is difficult to see how the statute gives by implication an opportunity to be heard at any stage of the proceedings. But as we hold this section of the statute unconstitutional on other grounds, it is unnecessary to determine this question. In each case the order must be,

*Writ of certiorari to issue.*