COMMONWEALTH *vs.* THOMAS M. G. CALDWELL.

Essex.   January 4, 1906. — February 27, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Hawkers and Pedlers.   Constitutional Law.   Words,* "Provisions."

Tea and coffee are not " provisions " within the meaning of R. L. c. 65, § 15, allowing provisions to be sold by hawkers and pedlers without a license.

The provisions of R. L. c. 65, §§ 15, 16, permitting hawkers and pedlers to sell agricultural products of the United States without a license and requiring a license for the sale of articles of the growth or production of foreign countries, are unconstitutional and void as an attempted regulation of commerce with foreign nations in violation of Const. of U. S. art. 1, § 8.   Whether this unconstitutional part of the statute is so far separable from the rest of the statute, and of so little comparative importance, as to leave the other provisions of the statute in force was not considered.

COMPLAINT, received and sworn to in the Lynn Police Court on September 29, 1905, charging the defendant with going from place to place in Lynn, exposing for sale and selling goods, wares and merchandise, to wit, tea and coffee, which were of the growth or production of foreign countries, without a license, the same not being among the articles enumerated in R. L. c. 65, § 15, as those which may be exposed for sale and sold without a license.

On appeal to the Superior Court the case was tried before *Gaskill,* J.   The following facts were agreed: On the date set out in the complaint the defendant went from place to place in Lynn exposing for sale and selling tea and coffee to householders for domestic use.   The tea and coffee were of the growth or production of foreign countries.   The defendant had no license from the secretary of the Commonwealth issued under R. L. c. 65, §§ 19–21.   The acts of the defendant were not in violation of any ordinance or by-law of the city of Lynn.   No testimony, other than the agreed facts, was introduced.

The defendant asked the judge to rule as follows : 1.  Upon the whole case no offence has been made out.   2.  If any offence under the statute has been made out, the statute is in conflict

with the Constitution of the United States. 3. If any offence under the statute has been made out, the statute is in conflict with the Constitution of Massachusetts.

The judge refused to give any of the rulings requested, and instructed the jury that the evidence justified a verdict of guilty. The jury returned such a verdict; and the defendant alleged exceptions.

*H. T. Lummus & C. N. Barney,* for the defendant.

*W. S. Peters,* District Attorney, for the Commonwealth.

KNOWLTON, C. J. The defendant was prosecuted under the R. L. c. 65, § 16, for peddling tea and coffee without a license. Section 15 of this chapter permits the sale of provisions without a license, and the first question in the case is whether tea and coffee are provisions, within the meaning of this section. We think that they are not. The word " provisions " as here used has been held to mean, " food, victuals, fare, provender." *Commonwealth* v. *Lutton,* 157 Mass. 392. *Commonwealth* v. *Reid,* 175 Mass. 325. Tea and coffee are not used as food, in the form in which they are sold by shopkeepers. They are used to make decoctions, to be taken as a beverage for their agreeable taste or their stimulating effect. In this respect they are not very different from wine and beer, which in many countries are in common use at meals. We are of opinion that they are not included in the term " provisions," in its ordinary sense, or in the meaning of this statute.

The next question is whether the statute is a regulation of commerce, in violation of art. 1, § 8, of the Constitution of the United States, which provides that, " The Congress shall have power . . . to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." The statute permits the sale by pedlers of agricultural products of the United States without a license, while it forbids unlicensed sales of agricultural products of other countries. Many agricultural products are articles of commerce, and in this respect there is, in the statute, a discrimination in favor of articles produced in the United States. It has been held many times that such an attempt at discrimination by a State is of no effect. *Welton* v. *Missouri,* 91 U. S. 275. *Cook* v. *Pennsylvania,* 97 U. S. 566. *Guy* v. *Baltimore,* 100 U. S. 434. *Brown*

v. *Maryland*, 12 Wheat. 419.   *Commonwealth* v. *Petranich*, 183 Mass. 217.   *Higgins* v. *Three Hundred Casks of Lime*, 130 Mass. 1.   *State* v. *Pratt*, 59 Vt. 590.   *State* v. *Furbush*, 72 Maine, 493.   The cases enunciating the general doctrine in the Supreme Court of the United States are very numerous, and many of them are cited and reviewed by Mr. Justice Gray, in *Emert* v. *Missouri*, 156 U. S. 296.   While in many of them the discrimination was against articles coming from other States, the rule in reference to discrimination against articles of foreign production is the same.   In *Cook* v. *Pennsylvania*, 97 U. S. 566, 573, Mr. Justice Miller said : " If a tax assessed by a State injuriously discriminating against the products of a State of the Union is forbidden by the Constitution, a similar tax against goods imported from a foreign State is equally forbidden."   In *Guy* v. *Baltimore*, 100 U. S. 434, 439, the general rule is stated by Mr. Justice Harlan as follows: " It must be regarded as settled that no State can, consistently with the Federal Constitution, impose upon the products of other States, brought therein for sale or use, or upon citizens because engaged in the sale therein, or the transportation thereto, of the products of other States, more onerous public burdens or taxes than it imposes upon the like products of its own territory."   In reference to the contention that the general rule should not apply after the imported goods have been mingled with the general mass of property in the State, this is the statement of Mr. Justice Field, in *Welton* v. *Missouri*, 91 U. S. 275 : " The commercial power continues until the commodity has ceased to be the subject of discriminating legislation by reason of its foreign character. That power protects it, even after it has entered the State, from any burdens imposed by reason of its foreign origin." ' We are of opinion that the discrimination in this statute between agricultural products of the United States and agricultural products of other countries, in reference to the requirement of a license to peddle them, renders the statute unconstitutional in this particular.

Other questions were raised by the defendant in regard to the constitutionality of the statute, some of which, in my opinion, well might be decided at this time.   But a majority of the justices do not think it necessary to the decision of this case, nor

desirable, that they should now be considered, and we do not consider them.

Whether the unconstitutional part of the statute renders the whole statute invalid, or leaves its other provisions in force if there is no other valid objection to them, depends upon whether it is so far separable from the rest, and of so little comparative importance, that the Legislature presumably would have enacted the other portion without it, if the attention of the Legislature had been directed to its unconstitutionality. See *Edwards* v. *Bruorton*, 184 Mass. 529; *Commonwealth* v. *Petranich*, 183 Mass. 217; *Commonwealth* v. *Anselvich*, 186 Mass. 376, 379.

*Exceptions sustained.*